JERICHO PAINTING & SPECIAL COATING, INC., Plaintiff,

v.

Margaret M. RICHARDSON, Commissioner of the Internal Revenue Service, Defendant.

Civ. A. No. 93–2097(RCL).

United States District Court, District of Columbia.

Nov. 22, 1993.

Richard W. Schwartzman, Gilbert & Kurent, Washington, DC, for plaintiff.

Margaret M. Earnest, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

I. Introduction

This matter comes before the court on plaintiff's motions for a temporary restrain-

ing order and preliminary injunctive relief and defendant's motion to dismiss. Plaintiff seeks to enjoin the Internal Revenue Service from proceeding with a forced sale of real property located at 4516 Cane Run Road, Louisville, Kentucky. Defendant contends that this court is without jurisdiction to hear this case. For the reasons discussed below, this court agrees.

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

When reviewing the adequacy of a complaint for purposes of a Rule 12(b)(1) motion, "the complaint will be construed broadly and liberally." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (1990 & Supp.1993). Plaintiff's factual allegations must be presumed true and liberally construed in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Therefore, a recitation of the undisputed facts of this case is in order.

### B. Facts

Plaintiff, Jericho Painting and Special Coating, Inc., ("Jericho") is a small, family-owned painting contractor engaged in the commercial and government painting business for 40 years. In 1990, Jericho prepared an $850,000 bid estimate for sandblasting and painting of 15 miles of jet fuel petroleum pipeline serving Anderson Air Force Base in the United States Territory of Guam. Plf. Mem.Supp. Plf.'s Mot.T.R.O. & Prelim.Inj. at 1.

On or about September, 1990, a government contract was awarded to Kentucky Bridge and Dam Co., Inc., ("KB & D") as the general contractor in the amount of $1.2 million. *Id.* at 2. KB & D awarded the field sandblasting, vacuuming, stripping, and painting responsibilities under the contract to plaintiff. Work commenced on the project on or about February, 1991. *Id.*

The contract specified a total of 300 corrosive pits that would require specialized treatment for cleaning and filling in preparation of painting the 15 miles of pipeline. The government also speculated that 100 of these pits would be "fill welded and 200 would be epoxy cement filled depending upon the size of the oxidation pit." *Id.*

Upon receipt of the government contract specifications, Jericho anticipated a job requiring four months work with the use of sophisticated new equipment. However, numerous problems ensued, and by April 1991, it became apparent to Jericho "that the condition of the pipeline was significantly and materially different from that which was represented to it in the specifications." *Id.* In fact, a lengthy inspection period uncovered hundreds of thousands of rust pits, many of which had actually perforated the pipeline. *Id.* at 3. Jericho proceeded with the work pursuant to government orders that Jericho continue and provide a proposal for a change order increasing the contract amount. Jericho continued performance without payment until September 12, 1991 when Jericho could no longer finance the project.[1] On or about April 1992, the government issued a termination of the contract for convenience of the government. *Id.*

Numerous negotiations and lawsuits have ensued as a result of this contractual dispute.[2] In September 1991, plaintiff brought suit against KB & D in the United States District Court for the Territory of Guam, claiming compensatory damages in excess of $4 million.[3] *Id.* In addition, Jericho has

---

**1.** At that time, the contract was 86.4% complete. Ultimately, Jericho encountered and repaired 139,280 corrosive pits. *Id.*

**2.** The procedural history of this case in this court is not as complicated. On October 12, 1993, the court entered a Temporary Restraining Order enjoining the sale of the property following a hearing in order to determine whether the facts of this case warranted treatment as an exception to the Anti–Injunction Act. The president of plaintiff, a Kentucky corporation, was required

to post a personal surety bond in the amount of $188,000.

On October 20, 1993, this court conducted a hearing on plaintiff's application for a preliminary injunction and defendant's motion to dismiss.

**3.** KB & D designated Jericho as the real party in interest and Jeffrey Woodcox, its president, as the agent for the purpose of resolving the dispute with the government and obtaining settlement funds to compensate the contractor. *Id.*

filed a complaint in the United States Court of Federal Claims.[4]

In October 1991, Jericho filed a $9.2 million claim for breach of contract and cardinal change with the Air Force. *Id.* at 4. The Air Force has not issued a contracting officer's final decision. However, the government has agreed to pay Jericho in accordance with a termination for convenience settlement proposal. A final negotiation was conducted at Anderson Air Force Base in August 1993, the contracting officer agreeing to $3.8 million. *Id.* The contracting officer has advised Jericho that it shall soon issue a contracting officer's final decision. Once the final decision is rendered, an invoice can be submitted for payment.

However, Jericho is presently broke as a result of the government's actions, and the Internal Revenue Service ("IRS") claims that Jericho owes $188,000 in taxes, interest, and penalties. In order to satisfy Jericho's unpaid federal taxes, the IRS planned the forced sale of the only asset Jericho was able to maintain during its dire financial situation created primarily by the nonpayment on the Air Force contract.[5] *Id.* at 5. Jericho's building is valued at $250,000.

Plaintiff does *not* assert that taxes are not owed. In fact, plaintiff even acknowledges the right of the IRS to conduct a sale of assets to recover unpaid taxes. Compl. at ¶¶ 31, 35. The IRS has been made aware of the contractual dispute with the Air Force and the forthcoming funds. Indeed, the IRS has filed a Notice of Levy with the Department of the Air Force indicating the amount due from the funds upon release to the contractor. However, the IRS refuses to wait for the final contracting officer approval of funds and wants to continue with the forced sale.

## II. Anti–Injunction Act

Plaintiff seeks an injunction preventing the IRS from selling its building at public auction in order to satisfy the alleged assessment of overdue taxes. Jericho feels it is inequitable for one arm of the government to deprive Jericho of funds rightfully due it, while another arm seeks to sell Jericho's only asset for failure to pay taxes resulting from a dire financial condition resulting primarily from the government's own actions. Jericho would simply like a credit toward its taxes. Plaintiff contends that:

> [T]he attendant circumstances of the present case are such so as to create a narrow exception to [the Anti–Injunction Act]. Jericho does not seek to restrain or otherwise enjoin the defendant from the assessment and/or collection of taxes. It disputes the ... sale at public auction of its building when other means are available.... [T]he government has already in its possession sums sufficient to satisfy the indebtedness that are due and owing Jericho and is wrongfully withholding said sums.... [T]he IRS has filed a lien for a portion of those sums so at such time as contract balances are paid over to the con-

---

4. In that suit, plaintiff requests the court to order the Air Force contracting officer to issue a contracting officer's final decision pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq. Id.*

5. Certain of the taxes predate the work on the contract. Although work on the contract began about February 1991, plaintiff failed to pay $51,985.53 of federal withholding taxes for the tax period October 1, 1990 through December 31, 1990. *See* Def.'s Mot. Dismiss Earnest Decl. Ex. A.; Plf.'s Mem.T.R.O. & Prelim.Inj. at 2. Not only does plaintiff admit owing payroll taxes, Jericho also acknowledges that taxes are owed for prior years. Despite the fact that some of these delinquent taxes date back to tax year 1987, these taxes were levied in 1991. These delinquent taxes also include corporate taxes for tax years 1989 and 1990 as well as federal with-holding taxes for the tax periods ending December 31, 1990, September 30, 1991, December 31, 1991, and March 31, 1992. Def.'s Mot. Dismiss at 4.

The IRS also states that in response to receiving the notice of the minimum bid for the sale, plaintiff filed Form 1139, Def.'s Mot. Dismiss Ex. B, an application for a tentative refund in order to claim a net operating loss carryback from 1991 to tax years 1989 and 1990, generating overpayments for those years in the amounts of $8,022.00 and $33,620.00 under the tentative refund provisions of Section 6411 of the Internal Revenue Code. However, the IRS states that "[p]laintiff's application was not filed timely within the statutory provisions of Section 6411. Even if it were, however, the claimed overpayments would not eliminate the total taxes due." *Id.* at 4 n. 3.

tractor, the tax debt shall be satisfied . . . . . Under the present circumstances, the government is over-secured.

Plf.'s Opp'n Def.'s Mot. Dismiss at 5–6.

 Unfortunately, this court lacks subject matter jurisdiction in this case. The Anti–Injunction Act [6] provides that:

[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

This statute embodies Congress' long-standing policy against premature interference with the determination, assessment, and collection of taxes. The Supreme Court has repeatedly recognized "the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and . . . require[s] that the legal right to dispute sums be determined in a suit for refund.'" *Bob Jones University v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974) (citing *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962)); *see Yamaha Motor Corp. v. United States of America,* 779 F.Supp. 610, 612 (D.D.C.1991). As the Court stated in *Williams Packing:*

The object of Section 7421(a) is to withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes.

*Id.* 370 U.S. at 5, 82 S.Ct. at 1128. The Supreme Court has noted that the absolute language of the statute "could scarcely be more explicit." *Bob Jones University,* 416 U.S. at 736, 94 S.Ct. at 2046. If a plaintiff cannot escape the bar of the statute, the district court is simply without jurisdiction to enter an order affecting the assessment or collection of federal taxes.

It is clear from Jericho's argument that it seeks to enjoin the collection of taxes in this case. If this court grants the requested injunctive relief, plaintiff will have prevented the IRS from collecting what plaintiff acknowledges are taxes due and owing. Thus,

Jericho clearly seeks relief here which is barred by the Anti–Injunction Act.

 Jericho also argues that it does not seek to enjoin the permanent collection of taxes, but merely to protect its property until the Air Force makes payment under the contract. However, the Supreme Court has held that the courts are not to examine the plaintiff's *motives* in applying the Anti–Injunction Act. A court must look to the *effect* the requested relief would have on the assessment or collection of taxes. *See Alexander v. "American United," Inc.,* 416 U.S. 752, 760–61, 94 S.Ct. 2053, 2058–59, 40 L.Ed.2d 518 (1974); *see also Sipkoff v. Whinston,* 354 F.Supp. 683 (M.D.Pa.1973) (noting that the Anti–Injunction Act makes no distinction between a temporary or permanent restraint on the assessment or collection of taxes). Indeed, this statute extends not only to the assessment or collection of taxes, but also to the entire process involved in enforcing the revenue laws. *See Reyes v. Lynch,* 1983 WL 1635 C.A. No. 83–0639 (D.D.C. July 29, 1983).

In this case Jericho wants to enjoin the IRS from proceeding with collection of the taxes until the Air Force either makes its decision or the United States Court of Federal Claims decides the complaint recently filed by plaintiff in that forum. Plaintiff's analysis, however, ignores well-established Anti–Injunction Act jurisprudence by focusing on the taxpayer's limited description of the relief sought, rather than on the obvious effects that granting the relief would have on the collection process.

 The Supreme Court has adopted two narrow judicial exceptions to the Anti–Injunction Act, allowing courts to accept jurisdiction over suits to enjoin the assessment or collection of taxes in very limited situations in order to prevent manifest injustice. The first was first described in *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). Under this exception, injunctive relief is available if a taxpayer can establish that (1) when the facts and law are viewed in the light most favorable to the government, "it is

---

**6.** I.R.C. § 7421(a) (West 1989).

clear that under no circumstances could the [g]overnment ultimately prevail"; *and* (2) "that 'equity jurisdiction otherwise exists' due to the threat of irreparable injury." *Yamaha,* 779 F.Supp. at 613 (citing *Williams Packing,* 370 U.S. at 7, 82 S.Ct. at 1129). A taxpayer must establish both of these elements; otherwise, injunctive relief is precluded.

In determining whether a taxpayer has met the first prong of the *Williams Packing* exception, it is well-settled that both the facts and the applicable law must be viewed in the light most favorable to the government. As the Supreme Court stated:

> We believe that the question of whether the Government has a chance of ultimately prevailing is to be determined on the basis of the information available to it at the time of suit. Only if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained.

*Williams Packing,* 370 U.S. at 7, 82 S.Ct. at 1129.

In this case, this court need not address the second, "equity jurisdiction" prong of the *Williams Packing* test for plaintiff concedes the tax liability and the IRS's right to force a sale of the property at issue. *See* Compl. at ¶¶ 31, 35. On the undisputed facts, the plaintiff's claim simply does not meet the first prong of *Williams Packing.*[7]

 The second limited exception to the Anti–Injunction Act was recognized in *South Carolina v. Regan,* 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984). In *South Carolina,* the plaintiff filed suit in the Supreme Court, invoking the court's original jurisdiction, to challenge the constitutionality of a section of the Tax Equity and Fiscal Responsibility Act of 1982. Relying on the Anti–Injunction Act, the defendant moved to dismiss on the grounds that the suit was one to restrain the assessment and collection of taxes. Both the parties and the Court agreed that Congress had not provided the state with a legal remedy to challenge the constitutionality of the statute; therefore, the Court rejected the defendant's position and created a new exception to the Anti–Injunction Act.

In *South Carolina,* the majority held:

> We need not address whether this case falls within the *Williams Packing* exception, for we hold that *the Act was not intended to bar an action where, as here, Congress has not provided the plaintiff with an alternative legal way to challenge the validity of a tax.*

*Id.* 465 U.S. at 372–73, 104 S.Ct. at 1110–11 (emphasis added).

In explaining its holding, the Court made it clear that it was creating this new exception to cover those instances in which the aggrieved taxpayer had no legal means to challenge the tax determination itself. The court's exception in *South Carolina* is limited to situations where a taxpayer has no alternative remedy.

Here, the situation is quite the opposite. There is no dispute that the plaintiff owes federal taxes and that plaintiff has alternative legal means to challenge the validity of the taxes. Plaintiff's proposed interference with the collection process is precisely the harm which the Anti–Injunction Act was enacted to prevent. The *Williams Packing*

---

7. *See Investors Syndicate of America, Inc. v. Simon,* 407 F.Supp. 83 (D.D.C.1975). In *Investors Syndicate,* plaintiff brought suit for a preliminary injunction, seeking to enjoin the IRS from implementing certain treasury regulations. Although plaintiff demonstrated a likelihood of irreparable injury and an inadequate legal remedy, it could not carry its burden of showing that under no circumstances could the government prevail. Accordingly, the court denied the application for a preliminary injunction and dismissed the action.

In deciding the proper construction of § 7421(a), the Supreme Court in *Williams Pack-*

*ing* examined the comparable Tax Injunction Act of 1937 which forbids the federal courts to entertain suits to enjoin the collection of state taxes, noting that it

> indicates that if Congress had desired to make the availability of the injunctive remedy against the collection of federal taxes not lawfully due depend upon the adequacy of the legal remedy, it would have said so explicitly. Its failure to do so shows that such a suit may not be entertained merely because collection would cause an irreparable injury, such as the ruination of the taxpayer's enterprise.

*Williams Packing,* 370 U.S. at 6, 82 S.Ct. at 1129.

and *South Carolina* exceptions simply do not apply.

III. Conclusion

Although the desire to reduce or avoid the overall tax burden is not the purpose underlying this case, plaintiff is still asking this court to direct the litigation strategy of the IRS. Plaintiff would have this court force the IRS to focus its energies on the Air Force negotiation process rather than on the forced sale proceeding. Because plaintiff's claims are preenforcement claims with respect to federal taxes and effect a restraint on the IRS in its plan to assess and collect taxes, this court cannot entertain this lawsuit.

For the reasons stated above, this court lacks jurisdiction over this case. Accordingly, the court shall grant defendant's motion and dismiss this case.