The INTERNATIONAL LOTTO
FUND, Plaintiff–Appellee,

v.

VIRGINIA STATE LOTTERY DEPART-
MENT; Kenneth W. Thorson, Director,
Defendants–Appellants,

and

United States of America, Defendant.

The INTERNATIONAL LOTTO
FUND, Plaintiff–Appellee,

v.

UNITED STATES of America,
Defendant–Appellant,

and

Virginia State Lottery Department;
Kenneth W. Thorson, Director,
Defendants.

Nos. 93–1324, 93–1325.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 8, 1994.

Decided March 31, 1994.

ARGUED: Edward T. Perelmuter, Tax Div., U.S. Dept. of Justice, Washington, DC, for appellant U.S.; Teresa Creef Manning, Asst. Atty. Gen., Office of the Atty. Gen., Richmond, VA, for appellants Virginia State Lottery and Thorson. John E. Holleran, Hunton & Williams, Richmond, VA, for appellee. ON BRIEF: Michael L. Paup, Acting Asst. Atty. Gen., Gary R. Allen, Bruce R. Ellisen, Kenneth E. Melson, U.S. Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for appellant U.S.; Stephen D. Rosenthal, Atty. Gen., R. Claire Guthrie, Chief Deputy Atty. Gen., Mary Yancey Spencer, Deputy Atty. Gen., Michael K. Jackson, Senior Asst. Atty. Gen., N. Pendleton Rogers, Senior

Asst. Atty. Gen., Office of the ·Atty. Gen., Richmond; VA, for appellants Virginia State Lottery and Thorson. Patricia M. Schwarzschild, George C. Howell, III, Paul D. Anders, Hunton & Williams, Richmond, VA, for appellees.

Before WILKINSON, LUTTIG, and WILLIAMS, Circuit Judges.

## OPINION

WILKINSON, Circuit Judge:

The question in this case is whether the Anti–Injunction Act, 26 U.S.C. § 7421(a), and the Tax Injunction Act, 28 U.S.C. § 1341, bar the district court from enjoining the Virginia State Lottery Department's withholding of federal and state income taxes from a foreign enterprise's lottery winnings. We hold that the statutes do bar such injunctive relief. We therefore reverse the district court's grant of an injunction and remand the case to the district court with directions that it be dismissed.

### I.

The International Lotto Fund ("Fund"), an Australian trust managed by Lowe & Lippmann Nominees Pty. Ltd., engages in lotteries and other games of chance throughout the world. In February 1992, the Fund systematically purchased a large number of tickets in the Virginia State Lottery, resulting in its holding winning tickets worth nearly $28 million. Among the Fund's winning tickets was one for the lottery jackpot, totalling $27,036,142 and payable in annual installments over a twenty-year period. Lowe & Lippmann claimed the prizes on March 5, 1992. Five days later, the Virginia State Lottery Department ("Lottery") announced that it would validate the winning tickets and pay the Fund, but that it would withhold 30% of each payment for federal taxes pursuant

to the Internal Revenue Service's recommendation. The Lottery also indicated that it would withhold 4% of each payment for Virginia state taxes.

On March 25, 1992, counsel for the Fund submitted a memorandum to the IRS arguing that the Fund's lottery winnings were not taxable in the United States and thus should not be subjected to withholding under I.R.C. § 1441(a), the withholding provision applicable to nonresident aliens. The Fund claimed that its winnings were non-taxable by virtue of the United States–Australia Income Tax Treaty,[1] and filed a completed IRS Form 1001, dated March 24, 1992, with the Lottery Department. Treasury regulations provide that a foreign corporation may seek an exemption from United States income tax on the basis of a tax treaty by filing such a form with the withholding agent. See 26 C.F.R. § 1.1441–6(c). The Fund also claimed that it was exempt from the withholding of state taxes from its lottery winnings.

On August 14, 1992, the director of the Lottery formally denied the Fund's request for an exemption from both federal and state withholding. The Fund responded by filing this action against the Lottery and its director, claiming that the Lottery had wrongly failed to honor its Form 1001 request and seeking both preliminary and permanent injunctive relief. The district court awarded the Fund a preliminary injunction, and subsequently a permanent injunction, requiring the Lottery to pay the full amount of the prizes without withholding any taxes, 800 F.Supp. 337. In granting the injunctions, the court found that such relief was not barred by either the Anti–Injunction Act, 26 U.S.C. § 7421(a), or the Tax Injunction Act, 28 U.S.C. § 1341. The Lottery, joined by the United States, appeals on the ground that those two acts denied the district court jurisdiction to issue injunctive relief. We

1. Article 7(1) of the Treaty states:
   The business profits of an enterprise of one of the Contracting States shall be taxable only in that State unless the enterprise carries on business in the other Contracting State through a permanent establishment situated therein. If the enterprise carries on business as aforesaid, the business profits of the enterprise may be taxed in the other State but only so much of

them as is attributable to that permanent establishment.
Convention Between the Government of the United States of America and the Government of Australia for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, *signed* Aug. 6, 1982, T.I.A.S. 10773, 1986–2 C.B. 220.

address the withholding of federal and state income taxes in turn.

## II.

■ Section 7421(a) of the Internal Revenue Code, commonly referred to as the Anti–Injunction Act, states in pertinent part that

> ... no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

26 U.S.C. § 7421(a). As the Supreme Court has recognized, the statute's language "could scarcely be more explicit," and it reflects the Act's principal purpose of protecting "the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference...." *Bob Jones Univ. v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974); *see also Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7–8, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). The Supreme Court has squarely held that the definition of "collection of tax" under § 7421(a) includes withholding. *See United States v. American Friends Serv. Comm.,* 419 U.S. 7, 10, 95 S.Ct. 13, 15, 42 L.Ed.2d 7 (1974) (per curiam). Accordingly, an "injunction against the collection of the tax by withholding enjoins the collection of the tax, and is therefore contrary to the express language of the Anti–Injunction Act." *Id.*

The Court's holding in *American Friends Service* leaves little question about the proper resolution of this case: the district court lacked jurisdiction to issue injunctive relief. No court is permitted to interfere with the federal government's ability to collect or assess taxes, yet that is just what the district court's injunction did here. Its order plainly directs the Virginia Lottery to pay the Fund "the full amount of each annual installment, when due, without federal and state income tax withholding throughout the life of this Order." This order is a perfect example of what the Anti–Injunction Act was passed to prevent.

Nonetheless, the Fund raises several objections to this straightforward application of the Anti–Injunction Act. First, the Fund asserts that it is entitled to a tax exemption under the United States–Australia Treaty, and that the bar of the Anti–Injunction Act yields a result inconsistent with the Treaty's terms. This assertion, however, overlooks the perfectly valid remedy available to the Fund, namely to pay the tax under protest and then seek a refund. The Supreme Court's reading of the Anti–Injunction Act makes it clear that challenges to the validity of a tax assessment can be determined in a refund proceeding, *see American Friends Serv.,* 419 U.S. at 12, 95 S.Ct. at 16; *Bob Jones Univ.,* 416 U.S. at 736–37, 94 S.Ct. at 2045–46; *Williams Packing,* 370 U.S. at 7–8, 82 S.Ct. at 1129, and it is in that context that the effect of the Treaty's terms can be determined.

Second, the Fund attempts to divert the court's attention from the central issue here—*i.e.,* the award of an injunction in a case concerning tax assessment or collection—by characterizing its claim as one to compel a withholding agent to accept its Form 1001. The Fund asserts that the only issue here is the Lottery's failure to act properly as a withholding agent, and that Treasury Regulations require the Lottery to honor the Fund's Form 1001 request. The Fund concludes that this action does not challenge the validity of the withholding framework, and thus is not barred by the Anti–Injunction Act.

We disagree. Regardless of how the claim is labelled, the effect of an injunction here is to interfere with the assessment or collection of a tax. The Fund is not free "to define the relief it seeks in terms permitted by the Anti–Injunction Act" while "ignor[ing] the ultimate deleterious effect such relief would have on the Government's taxing ability." *Educo, Inc. v. Alexander,* 557 F.2d 617, 620 (7th Cir.1977); *see also Yamaha Motor Corp., U.S.A. v. United States,* 779 F.Supp. 610, 613 (D.D.C.1991) (holding that plaintiff's construction of claims did not block application of Anti–Injunction Act when plaintiff's claims "manifest[ed] a purpose of restraining the IRS in its plan to assess and collect

taxes"). It is quite clear that an injunction against the withholding of taxes disrupts the government's "taxing ability," even when the plaintiff claims that the injunction merely forces the withholding agent to carry out its "ministerial" duties. *See Lynch v. Polaroid Corp.,* 80–1 U.S.T.C. (CCH) ¶ 9191 (D.Mass.) (applying Anti Injunction Act to bar plaintiff's action to "force acceptance of his signed W–4 form"), *aff'd,* 627 F.2d 1088 (1st Cir. 1980). Indeed, even if a Treasury Regulation did require the Lottery to accept the Fund's request for an exemption, such a regulation could not confer jurisdiction upon the district court to consider its violation when a statute explicitly proscribes the exercise of jurisdiction over suits seeking to restrain the assessment or collection of taxes.[2]

■ Finally, the Fund claims that the Anti–Injunction Act applies only to actions initiated after the IRS has assessed the taxpayer's liability, and thus that challenges to withholding under 26 U.S.C. § 1441(a) are not barred. The Fund argues that an employer's withholding of taxes under I.R.C. § 3402, for example, is often carried out in accordance with directions from the IRS after the IRS has reviewed the employee's Form W–4. *See* 26 C.F.R. § 31.3402(f)(2)–1(g). Because the withholding determination here is being made before the IRS has had any opportunity to consider the Fund's tax liability, the Fund asserts, an injunction against withholding cannot qualify as a restraint on the assessment of taxes.

This argument, though creative, is also unavailing. Nothing in the Anti–Injunction Act conditions its applicability on an antecedent determination of withholding status by the IRS. Courts have found the Anti–Injunction Act to apply in numerous cases where the IRS had yet to make a final determination of the plaintiff's tax liability. *See, e.g., Bob Jones Univ.,* 416 U.S. at 732, 94 S.Ct. at 2044 (applying § 7421 to taxpayer's claim that § 501(c)(3) status was improperly revoked); *Smith v. Rich,* 667 F.2d 1228, 1230 (5th Cir.1982) (stating that "[t]he § 7421 ban against judicial interference ... is equally applicable to activities which are intended to or may culminate in the assessment or collection of taxes."). Furthermore, withholding under § 1441(a) is no less a method of tax collection than withholding under § 3402: the purpose of withholding under both sections is to ensure that the Treasury gets its due. Withholding plays an especially important role in collection when the taxpayer is a foreign person or entity, because one state will generally not assist another state in the collection of a tax. *See generally* Harvey P. Dale, *Withholding Tax on Payments to Foreign Persons,* 36 Tax L.Rev. 49, 52 (1980). The Fund has failed to present a sufficient justification for treating withholding from a foreign corporation as anything other than the collection of a tax.[3]

### III.

■ In addition to contesting the Lottery's withholding of federal income taxes, the Fund asserts that the Lottery erroneously withheld 4% of its winnings as Virginia state taxes. The district court found merit in this claim and awarded an injunction against such withholding. Again, however, the dis-

---

2. The Fund contends, and the district court apparently agreed, that the case of *Holmstrom v. PPG Indus., Inc.,* 512 F.Supp. 552 (W.D.Pa. 1981), supports the Fund's claim that the relief granted was not barred by the Anti–Injunction Act. *Holmstrom,* however, contradicts the clear holding in *American Friends Service.* The *Holmstrom* court attempted to distinguish *American Friends Service* on the basis that the tax in that case was admittedly due. *See Holmstrom,* 512 F.Supp. at 557. However, the holding in *American Friends Service* applies with equal force to the vast majority of cases in which the taxpayer-plaintiff contests his liability. *See, e.g., Woods v. IRS,* 3 F.3d 403, 403 (11th Cir.1993); *Edgar v. Inland Steel Co.,* 744 F.2d 1276, 1277–78 & n. 1 (7th Cir.1984). The *Holmstrom* court also ap-

proved of Justice Douglas' view that withholding was not a form of tax collection—a view that the other eight Justices rejected. *See American Friends Serv.,* 419 U.S. at 10, 95 S.Ct. at 15.

3. The Fund did not contend, nor could it have, that the "judicial exception" to the Anti–Injunction Act would apply in this case. That exception requires as one of its prerequisites that it be clear that the government "could in no circumstances ultimately prevail on the merits." *American Friends Serv.,* 419 U.S. at 10, 95 S.Ct. at 15 (citing *Commissioner v. "Americans United" Inc.,* 416 U.S. 752, 758, 94 S.Ct. 2053, 2057, 40 L.Ed.2d 518 (1974)). No such showing has been made here.

trict court overstepped the bounds of its jurisdiction in granting such relief.

The Tax Injunction Act, 28 U.S.C. § 1341, states that

[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

The plain language of this statute indicates that if (1) the action is to "enjoin, suspend or restrain the assessment, levy or collection" of a state tax, and (2) the state provides a "plain, speedy and efficient" remedy in its own courts, then the district court is without jurisdiction to issue an injunction. Because, as discussed above, an injunction against withholding necessarily interferes with "the assessment, levy or collection" of a tax, we need address only the availability of a "plain, speedy and efficient" remedy in Virginia.

Virginia Code § 58.1–1825 provides that any person aggrieved by an assessment of state taxes may apply for relief in a state circuit court. The statute further provides that

[s]uch application shall not be deemed filed unless (i) the assessment has been paid or (ii) in lieu of payment, the taxpayer has posted bond [in accordance with statutory requirements].[4]

This statute plainly provides taxpayers in Virginia with a remedy that is "plain, speedy and efficient." In *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981), the Supreme Court held that a statute requiring payment of a tax before the taxpayer could challenge the assessment in court constituted a "plain, speedy and efficient remedy" within the meaning of the Tax Injunction Act. *See id.* at 528, 101 S.Ct. at 1237. Accordingly, the fact that a taxpayer must either pay a tax or post a bond prior to challenging the state tax assessment does not render the state's remedy outside the scope of the Tax Injunction Act.

Our conclusion reflects the fact that the Tax Injunction Act was initially "predicated upon the desirability of freeing, from interference by the federal courts, state procedures which authorize litigation challenging a tax only after the tax has been paid." *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 301, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943). The Virginia statute provides taxpayers with a forum in which to challenge the validity of tax assessments and therefore constitutes the kind of state remedy envisioned by the Tax Injunction Act. That Act, in turn, "insulates" Virginia's system of taxation from interference by the federal courts. *See Strescon Indus., Inc. v. Cohen*, 664 F.2d 929, 931 (4th Cir.1981).

## IV.

For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded with directions to dismiss it for lack of jurisdiction.

***REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.***

---

4. Prior to July 1, 1992, the statute did not include a bond provision, and thus an assessment had to be paid before the application could be deemed filed. Our conclusion would be the same under the earlier statute, however, as the bond provision has no effect on our analysis.