*Daljaco, Incorporated et. al. v. D'Alan Baugh*, No. 1041, September Term, 2024.
Opinion by Albright, J.

**CONTRACT LAW > IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING**

There is no independent cause of action for breaching the duty of good faith and fair dealing implied in every contract. The duty of good faith and fair dealing "does not obligate a party to take affirmative actions that the party is clearly not required to take under the contract."

**DECLARATORY JUDGMENT > AVENUES FOR DECLARATORY RELIEF**

The Maryland Declaratory Judgments Act ("MDJA") provides two avenues for declaratory relief in the circuit court: (1) Under Section 3-406 of the MDJA, the Circuit Court may construe a contract or other instrument; and (2) Under Section 3-409 of the MDJA, the circuit court may grant declaratory judgment "in a civil case if it will serve to terminate the uncertainty or controversy giving rise to the proceeding."

**DECLARATORY JUDGMENT > SPECIAL STATUTORY REMEDIES**

Declaratory judgment is not available under Section 3-409 of the MDJA where there is a special form of statutory remedy available.

**DECLARATORY JUDGMENT > OBLIGATIONS OF THE CIRCUIT COURT**

When a party requests declaratory judgment and such a judgment is proper, the court must declare the rights of the parties, even if the declaration is not what the declaratory judgment plaintiff sought. A declaration of the parties' rights must be in the form of a separate written declaratory judgment.

**DECLARATORY JUDGMENT > ANCILLARY RELIEF**

The circuit court is authorized to issue relief ancillary to the declaratory judgment in the same action where such relief is "based on a declaratory judgment."

**SUMMARY JUDGMENT > REQUIREMENTS**

A party may move for summary judgment where there is no dispute of material facts, and they are entitled to judgment as a matter of law.

**TAX LAW > ANTI-INJUNCTION ACT AND DECLARATORY JUDGMENT ACT**

The federal Anti-Injunction Act bars the circuit court from issuing declaratory judgment where the target of the declaratory judgment is the assessment or collection of federal tax by the IRS -- even where injunctive relief against the IRS is not specifically requested.

**TAX LAW > SPECIAL REMEDY FOR TAX DISPUTES**

Under 26 U.S.C.A. § 7422, a taxpayer who wishes to dispute the assessment or collection of federal tax must first pay the tax and file a claim for refund or credit with the IRS.

**CIVIL PROCEDURE > AMENDMENTS TO PLEADINGS**

A plaintiff may not amend their complaint through arguments at the summary judgment stage.

**DECLARATORY JUDGMENT > PLEADINGS**

Declaratory judgment may not be rendered on a matter that was not requested in the plaintiff's complaint.

Circuit Court for Baltimore County
Case No. C-03-CV-22-004363

<u>REPORTED</u>

<u>IN THE APPELLATE COURT</u>

<u>OF MARYLAND</u>

No. 1041

September Term, 2024

_____

DALJACO, INC., ET AL.

v.

D'ALAN BAUGH

_____

Shaw,
Albright,
Kehoe, Christopher B.,
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Albright, J.

_____

Filed: December 19, 2025

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

Appellant Daljaco, Inc. ("Daljaco") is an S corporation that, until December 31, 2020, was owned half by Appellant Martin Burns and half by Appellee D'Alan Baugh. In this appeal from the Circuit Court for Baltimore County, Mr. Burns and Daljaco (together, "Appellants") challenge the money judgment and disbursal of escrowed funds, entered via summary judgment in Mr. Baugh's favor, following his claim that Mr. Burns and Daljaco improperly claimed Employee Retention Tax Credits ("ERTCs") for the 2020 tax year, with the result that Mr. Baugh's estimated tax liability was increased. Mr. Burns and Daljaco present the following questions for our review:

I. Did the Circuit Court err, as a matter of law, in granting Appellee's Motion?

II. Did the Circuit Court err, as a matter of law, in denying Appellants' Cross-Motion as it did not have subject matter jurisdiction?

III. Did the Circuit Court err when it failed to issue a written declaratory judgment defining the rights and obligations of the parties?

We answer "yes" to the first two questions. As to the third, our answer is longer. Because the circuit court was largely without authority to issue the declaratory judgments that Mr. Baugh sought, the circuit court did not err in failing to render them. But, without a declaratory judgment, the circuit court did err in entering ancillary relief in the form of a money judgment and disbursal of the escrowed funds (collectively, the "money judgment") in favor of Mr. Baugh. Accordingly, we reverse the circuit court's summary judgment in favor of Mr. Baugh and the circuit court's decision declining to enter summary judgment in favor of Mr. Burns and Daljaco. We vacate the money judgment in

favor of Mr. Baugh, and remand for further proceedings not inconsistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Daljaco is an S corporation,[1] incorporated in Maryland, that owns and operates three senior home-care franchises in the state. From December 2014 to the end of December 2020, Mr. Baugh and Mr. Burns each owned half of Daljaco's shares.

During the early months of the pandemic, Daljaco was eligible for some kinds of pandemic-related relief, but not others. In April 2020, Daljaco received a Paycheck Protection Program ("PPP") loan under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act in the amount of $1,636,900.00. *See* 15 U.S.C.A. § 9001, *et seq*. (2020). But, at the time that Daljaco received the PPP loan, its receipt of the loan meant

---

[1] An S corporation is a corporation that elects to be treated as an S corporation pursuant to 26 U.S.C.A. § 1632. According to the Internal Revenue Service,

> S corporations are corporations that elect to pass corporate income, losses, deductions, and credits through to their shareholders for federal tax purposes. Shareholders of S corporations report the flow-through of income and losses on their personal tax returns and are assessed tax at their individual income tax rates. This allows S corporations to avoid double taxation on the corporate income.

*S Corporations*, I.R.S., https://www.irs.gov/businesses/small-businesses-self-employed/s-corporations (last visited Nov. 20, 2025). Further, ". . . [a]n S corporation's items of income, gain, loss, deduction, and credit—whether or not distributed—flow through to the shareholders, who must report their pro rata shares of such items on their individual income tax returns for the shareholder taxable year within which the S corporation's taxable year ends. Sec. 1366(a); *Mourad v. Commissioner,* 121 T.C. 1, 3, 2003 WL 21509073 (2003), *aff'd,* 387 F.3d 27 (1st Cir. 2004); *see also, e.g., Dunne v. Commissioner,* T.C. Memo. 2008–63; sec. 1.1366–1(a), Income Tax Regs." *Kumar v. Comm'r,* 106 T.C.M. (CCH) 109 (T.C. 2013).

that Daljaco was ineligible for ERTCs for three quarters of 2020. *See* CARES Act, H.R. 748, 116th Cong. § 2301(j) (2020); Internal Revenue Service Notice 2021-20, 2021-11 IRB 922. ERTCs are "broad-based refundable tax credit[s] designed to encourage employers to keep employees on their payroll."

Near the end of 2020, Mr. Baugh and Mr. Burns agreed that Mr. Burns would buy out Mr. Baugh's interest in Daljaco. Thus, on December 16, 2020, Mr. Baugh, Mr. Burns, and Daljaco entered into a Stock Purchase Agreement (the "Agreement"), and on December 31, 2020, they closed on the Agreement. Pursuant to the Agreement, Daljaco purchased Mr. Baugh's shares on a "Net Cash" and "Net Liability" basis. This meant that, at closing, Daljaco's current liabilities were satisfied by its current assets, and the excess current assets were distributed evenly between Mr. Baugh and Mr. Burns. Mr. Baugh's distribution was calculated at closing on December 31, 2020, and he was paid $518,412.07 on that date. As of 11:59 p.m. on December 31, 2020, Mr. Burns was the president and sole shareholder of Daljaco.

The Agreement specified what obligations Mr. Burns and Mr. Baugh would owe each other and Daljaco after Mr. Baugh was no longer a shareholder. While anticipating that the PPP loan would be forgiven, the Agreement nonetheless stipulated that if any of it was not forgiven, each party would be liable for fifty percent of the outstanding balance. The Agreement did not mention the possibility that Daljaco could claim ERTCs for 2020. Nor did it restrict, or otherwise address, Mr. Burns's ability to amend Daljaco's tax returns.

In 2021, the law changed regarding eligibility for ERTCs. Specifically, under the Consolidated Appropriations Act of 2021, companies that had received a PPP loan became eligible to receive ERTCs if they met certain requirements. Consol. Appropriations Act, 2021, H.R. 133, 116th Cong. § 206(c)(2)(A) (2020).

In December 2021, Mr. Burns, upon learning of this change in the law, discovered that Daljaco had become eligible to receive ERTCs. Thus, on December 20, 2021, Mr. Burns, without consulting Mr. Baugh, caused Daljaco to file amended federal payroll tax returns for the final three quarters of 2020. With these amended returns,[2] Daljaco claimed $1,471,917.48 in ERTCs, which resulted in a refund to Daljaco of $1,471,917.48, the amount it had paid in payroll taxes for the affected quarters.

On December 21, 2021, Daljaco entered into an agreement with FCS Advisors, LLC, d/b/a Brevet Capital Advisors ("Brevet") to sell Daljaco's anticipated ERTC refund receivables for $1,350,000.00 upon receipt from the IRS. This transaction paid off Daljaco's remaining liability on a loan that it took out from M&T Bank to purchase Mr. Baugh's shares in 2020. To this end, Daljaco instructed the IRS to forward Daljaco's ERTC refund receivables directly to Brevet.[3]

On February 9, 2022, Patrick Buckler (chief operating officer and general counsel for Daljaco) contacted Mr. Baugh by email to notify Mr. Baugh of the consequences to

---

[2] For each of the three quarters, Daljaco filed a Form 941-X Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund.

[3] In spite of this instruction, the ERTCs were sent to Daljaco itself. Daljaco subsequently passed them along to Brevet.

him, of Daljaco's decision to claim ERTCs for the final three quarters of 2020. Specifically, Mr. Buckler told Mr. Baugh that Daljaco was amending its quarterly payroll tax returns to claim the ERTCs for which Daljaco had become eligible. Mr. Buckler further advised: "As the Company is a[n] S[-]Corporation, the income passes through to you and [Mr. Burns], and you both need to file amended personal returns and pay taxes on the additional income."

On February 23, 2022, Mr. Baugh responded by email to Mr. Buckler asking why he was not informed of the intention to file the amended return, where he could get a copy of the amended return for his records, and when he could collect the check for "my half of the refund for 2020."

Two hours later, Mr. Buckler informed Mr. Baugh by email that the ERTC receivable had been purchased by a third-party (Brevet) to pay "Company obligations." In this email, Mr. Buckler also stated that Mr. Baugh was "not entitled to any part of the ERTC receivable or any funds paid for the receivable" because the Stock Purchase Agreement had not "exclude[d] or carve[d] out any potential ERTC receivable."

On October 27, 2022, Mr. Baugh sued Appellants in the Baltimore County Circuit Court, seeking injunctive relief, declaratory judgment, and damages. In January 2023, Daljaco received the refund it claimed from the ERTCs into its operating account[4] and

---

[4] This is not the first appeal generated by this dispute. In October 2024, we dismissed as moot Mr. Burns's and Daljaco's interlocutory appeal challenging the writ of attachment before judgment that Mr. Baugh had secured on Daljaco's assets. *Daljaco, Inc. v. Baugh*, WL 4579103, *4 (Oct. 25, 2024). Our conclusion of mootness stemmed from the parties' agreement that Mr. Burns and Daljaco would place $735,958.74 into an

wire-transferred the funds to Brevet. Daljaco also amended its Form 1120S and issued amended K-1s to Mr. Baugh and Mr. Burns. The amended K-1 had the effect of increasing the share of Daljaco's profits attributed to Mr. Baugh. Mr. Baugh estimated this increased his personal income tax liability by $180,000.00.

**THE PARTIES' SUMMARY JUDGMENT MOTIONS**

In the spring of 2024, both parties moved for summary judgment. By then, Mr. Baugh had amended his complaint and voluntarily dismissed some of his claims. What remained was Mr. Baugh's claim for Declaratory Judgment (Count II) and Breach of Contract (Count IV).

In Count II, Mr. Baugh asked the circuit court to declare that Mr. Burns "lacks standing to amend" Daljaco's pre-2021 tax returns without Mr. Baugh's consent and that Mr. Baugh was entitled to fifty percent of any tax credits Daljaco received as a result of amendment of Daljaco's pre-2021 tax returns, "including any ERTC received by [Daljaco] due to an amendment to [Daljaco's] 2020 tax returns or the dollar value of such tax credits[.]" Mr. Baugh also sought the imposition of a constructive trust on fifty percent of Daljaco's ERTCs and that Daljaco and Mr. Burns "convey" fifty percent of any ERTC received from the IRS by Daljaco for the 2020 tax year to Mr. Baugh.

In Count IV, Mr. Baugh alleged that Daljaco and Mr. Burns breached the Stock Purchase Agreement's implied duty of good faith and fair dealing by obtaining the ERTCs for the 2020 tax year without Mr. Baugh's consent, depriving Mr. Baugh of the

interest-bearing escrow account pending satisfaction of any judgment in favor of Mr. Baugh. *Id*. at *3–4. We discuss that Consent Order again in footnote 6 below.

benefit of the ERTCs, and imposing a tax liability on Mr. Baugh for money he would not receive. Mr. Baugh alleged that he was damaged as a result.

### *Mr. Baugh's Motion for Summary Judgment*

In his summary judgment motion, Mr. Baugh focused on Count II, his declaratory judgment count. He argued that federal tax law governing S corporations creates a legal entitlement to a pro rata share of any tax credits received by Daljaco.[5] Mr. Baugh did not squarely address Count IV, his breach of contract count.

As the basis for his conclusion that he was entitled to declaratory judgment as a matter of law, Mr. Baugh cited two federal opinions: *Alon International, Inc. v. United States*, 910 F. Supp. 233, 235–36 (W.D. Pa. 1995) and *In re RedF Marketing, LLC*, 589 B.R. 534, 542–43 (Bankr. W.D. N.C. 2018). In the first, the U.S. District Court held that the current owner of Alon Processing, a C-corporation, did not have standing to amend a Form 1120S for a tax year when another individual was the owner and sole shareholder because the corporation had been an S corporation under the prior ownership and "*all* income or loss [from the amended return] would pass through to [the former sole shareholder,]" making him the only taxpayer conceived of in 26 U.S.C.A. § 6511(a). *Alon Int'l, Inc.*, 910 F. Supp. at 235–36 (emphasis added). In the second, the U.S. Bankruptcy Court found that RedF was not entitled to an income tax refund because it was a "pass through" entity, and only the shareholders who bore original responsibility

---

[5] Mr. Baugh alternately claimed entitlement to a pro rata share of the ERTCs themselves or to the dollar value thereof in his First Amended Complaint and all subsequent filings.

for paying the refunded tax could amend the return to seek a tax refund. *In re RedF Mktg., LLC*, 589 B.R. at 543–44.

Relying entirely on these cases, Mr. Baugh argued that because Daljaco was for all relevant periods an S corporation, Daljaco's tax returns for the years when he was a shareholder could not be amended without his consent, and Daljaco was obligated to pass directly to him his share of all received "tax attributes" in the form of distributions.

### *Mr. Burns's and Daljaco's Cross Motion for Summary Judgment*

Daljaco and Mr. Burns also moved for summary judgment (the "cross motion"). They contended that they were entitled to judgment as a matter of law on multiple grounds. Pertinent to this appeal are three arguments: (1) the circuit court lacked subject matter jurisdiction over Count II (Mr. Baugh's declaratory judgment count) under the federal Declaratory Judgments Act ("DJA") and Anti-Injunction Act ("AIA"); (2) Mr. Baugh failed to allege any facts to state a facially plausible claim for breach of contract or breach of implied covenants of good faith and fair dealing; and (3) Mr. Baugh did not identify the breach of any contractual provision that entitled him to a portion of the ERTCs issued to Daljaco.

Mr. Baugh opposed the cross-motion. Pertinent to Mr. Burns's and Daljaco's appellate claims, Mr. Baugh argued that the AIA and the DJA did not deprive the circuit court of subject matter jurisdiction as to Count II.

*The Circuit Court's Judgments*

After a July 1, 2024 hearing on both motions for summary judgment, the circuit court issued two orders. The first granted Mr. Baugh's Motion for Summary Judgment and entered money judgment in his favor.

> Upon consideration of Plaintiff's Motion for Summary Judgment, any response thereto, and a hearing on July 1, 2024, it is hereby:
> ORDERED, that Plaintiff's Motion for Summary Judgment be and is hereby GRANTED; and it is further
> ORDERED, that Judgment in the amount of six hundred one thousand, five hundred one dollars and eighty-five cents ($601,501.85) be entered in favor of Plaintiff D'Alan Baugh and against Defendants Daljaco, Incorporated and Martin Burns, together with pre-judgment interest at the rate of 6% per annum from January 18, 2023; and it is further
> ORDERED, that the funds held in escrow pursuant to the Consent Order[6] entered October 12, 2023, shall be released to Plaintiff D'Alan Baugh, to the extent of the above Judgment, on or before August 30, 2024.

The second denied Mr. Burns's and Daljaco's Cross-Motion for Summary Judgment. Neither judgment declared the legal rights of the parties to the ERTCs or to their dollar value.

On July 26, 2024, Mr. Burns and Daljaco noted this timely appeal.

## STANDARD OF REVIEW

We review the circuit court's granting of Mr. Baugh's motion for summary judgment *de novo*. *See Myers v. Kayhoe*, 391 Md. 188, 203 (2006) ("The question of

---

[6] On October 6, 2023, Mr. Baugh and Appellants entered into a Consent Order under which Daljaco placed $735,958.74 into an interest-bearing escrow account to be released in satisfaction of any judgment for Mr. Baugh or to return to Daljaco should it and Mr. Burns prevail.

whether a trial court's grant of summary judgment was proper is a question of law subject to *de novo* review on appeal.").

We review the circuit court's denial of Mr. Burns's and Daljaco's cross-motion for summary judgment for abuse of discretion. *See Dashiell v. Meeks*, 396 Md. 149, 165 (2006) ("[O]n appeal, the standard of review for a denial of a motion for summary judgment is whether the trial judge abused his discretion and in the absence of such a showing, the decision of the trial judge will not be disturbed."). A trial court has discretion to deny a motion for summary judgment "even [when] the technical requirements for the entry of such a judgment have been met." *Metro. Mortg. Fund, Inc. v. Basiliko*, 288 Md. 25, 28 (1980).

Ordinarily, an appellate court will review summary judgment only on the grounds that the trial court relied upon. *Hamilton v. Kirson*, 439 Md. 501, 523 (2014). Where the trial court fails to state a reason for granting a motion for summary judgment, the Appellate Court of Maryland will look to the record, and "affirm the judgment *so long as the record discloses it was correct*[.]" *Smigelski v. Potomac Ins. Co. of Ill.*, 403 Md. 55, 61 (2008) (cleaned up, emphasis added).

## DISCUSSION

### I.      Legal Framework

#### A.      *Implied Duties of Good Faith and Fair Dealing*

To prevail on a claim for breach of contract, plaintiff must identify and allege which contractual provision was breached. *RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 655 (2010) (emphasizing that a breach of contract claim must show a specific contractual

10

obligation owed to the plaintiff)."[A]ny ambiguity or uncertainty in the allegations is to be construed against the pleader." *Id.* (quoting *Continental Masonry Co., Inc. v. Verdel Constr. Co., Inc.,* 279 Md. 476, 480 (1977)).

All contracts include an implied duty of good faith and fair dealing. *CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 429 Md. 387, 450 (2012) ("[E]very contract contains an implied covenant of good faith and fair dealing."); *Educ. Testing Serv. v. Hildebrant*, 399 Md. 128, 141 (2007) ("In every contract there exists an implied covenant that the parties to the contract will act in good faith when dealing with each other.").

Yet "no court has held that Maryland recognizes a separate cause of action for breach of duty of good faith and fair dealing." *Corp. Healthcare Fin., Inc. v. BCI Holdings Co.*, 444 F. Supp. 2d 423, 434 (D. Md. 2006). Instead, the implied duty of good faith and fair dealing, implicit in every contract, is "better viewed as an element of another cause of action at law," specifically, breach of contract by "prevent[ing] the other party from performing his obligations under the contract." *Mount Vernon Prop., LLC v. Branch Banking & Tr. Co*., 170 Md. App. 457, 472 (2006).  "In short, while the implied duty of good faith and fair dealing as recognized in Maryland requires that one party to a contract not frustrate the other party's performance, it is not understood to interpose new obligations about which the contract is silent, even if inclusion of the obligation is thought to be logical and wise. An implied duty is simply a recognition of conditions inherent in expressed promises."  *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 184 (4th Cir. 2000).

11

## B. *Declaratory Judgment*

The Maryland Declaratory Judgments Act ("MDJA") provides two avenues for declaratory relief in the circuit court. Under Section 3-406 of the MDJA, the circuit court may construe a contract or other instrument.

> Any person interested under a deed, will, trust, land patent, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, administrative rule or regulation, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, administrative rule or regulation, land patent, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 3-406.

Under Section 3-409 of the MDJA, the circuit court may "grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding[,]" and if other statutory prerequisites are met.

> Except as provided in subsection (d) of this section, a court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:
>
> > (1) An actual controversy exists between contending parties;
> >
> > (2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or
> >
> > (3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it.

CJP § 3-409(a). Declaratory judgment under Section 3-409(b) is not available if "[i]f a statute provides a special form of remedy for a specific type of case," CJP § 3-409(b), among other situations. Where a special form of statutory remedy is available, the

"statutory remedy shall be followed in lieu of a proceeding under [the MDJA]." CJP § 3-409(b).

Under either avenue for declaratory relief, there must be justiciable controversy. *Boyds Civic Ass'n v. Montgomery Cnty. Council*, 309 Md. 683, 689 (1987). Our Supreme Court has said,

> The existence of a justiciable controversy is an absolute prerequisite to the maintenance of a declaratory judgment action. It follows, therefore, that in the absence of a justiciable controversy a court should not entertain an action for declaratory judgment. This Court has defined a justiciable controversy as one wherein there are interested parties asserting adverse claims **upon a state of facts which must have accrued** wherein a legal decision is sought or demanded. The rationale is that addressing non-justiciable issues would place courts in the position of rendering purely advisory opinions, a long-forbidden practice in this State.

*State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 591 (2014) (cleaned up).

"[W]hen a declaratory judgment is brought, and the controversy is appropriate for resolution by declaratory judgment, the court must enter a declaratory judgment." *Converge Servs. Grp., LLC v. Curran*, 383 Md. 462, 477 (2004) (cleaned up). "To do otherwise, [our Supreme Court has] held is error." *Bowen v. City of Annapolis*, 402 Md. 587, 608 (2007). This is true "whether a declaratory judgment action is decided for or against the plaintiff[.]" *Case v. Comptroller*, 219 Md. 282, 288 (1959). In *Bowen v. City of Annapolis*, our Supreme Court has explained this requirement:

> When a declaratory judgment action is brought and the controversy is appropriate for resolution by declaratory judgment, the court must enter a declaratory judgment and that judgment, defining the rights and obligations of the parties or the status of the thing in controversy, *must be in writing*. It is not permissible for the court to issue an oral declaration. The text of the judgment must be in writing. Not since the 1997 amendment to Maryland Rule 2-601(a), is it permissible for the declaratory judgment to be part of a

13

memorandum. That rule requires that each judgment shall be set forth on a separate document. *When entering a declaratory judgment, the court must, in a separate document, state in writing its declaration of the rights of the parties, along with any other order that is intended to be part of the judgment. Although the judgment may recite that it is based on the reasons set forth in an accompanying memorandum, the terms of the declaratory judgment itself must be set forth separately.* Incorporating by reference an earlier oral ruling is not sufficient, as no one would be able to discern the actual declaration of rights from the document posing as the judgment. This is not just a matter of complying with a hyper-technical rule. The requirement that the court enter its declaration in writing is for the purpose of giving the parties and the public fair notice of what the court has determined.

402 Md. at 608–09 (cleaned up). By contrast, "when a declaratory judgment action is brought and the controversy is not appropriate for resolution by declaratory judgment, the trial court is neither compelled, nor expected, to enter a declaratory judgment." *Converge Servs. Grp., LLC*, 383 Md. at 477.

The circuit court is authorized to issue relief ancillary to declaratory judgment, and to do so in the same action in which declaratory judgment is sought, but such relief must be "based on a declaratory judgment." CJP § 3-412(a) ("Further relief based on a declaratory judgment or decree may be granted if necessary or proper[.]"); *see also Nova Rsch., Inc. v. Penske Truck Leasing Co.,* 405 Md. 435, 460 (2008) ("[A] court generally has jurisdiction to grant all further and necessary or proper relief to effectuate the declaratory judgment entered by the court.").

### C.    Summary Judgment

A party may move for summary judgment where there is no dispute of material fact, and they are entitled to judgment as a matter of law. Md. Rule 2-501(a). The trial court "shall enter judgment" where there are no genuine disputes of material fact and the

14

party "in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2-501(f). If the motion is not based on facts contained in the record, then it must be supported by an affidavit. Md. Rule 2-501(a). That affidavit must be founded upon the personal knowledge of the affiant. Md. Rule 2-501(c) ("An affidavit supporting or opposing a motion for summary judgment shall be made upon personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit.").

In spite of Rule 2-501's mandatory language,

> [t]he denial of summary judgment may present any one of three possibilities. The first is when there is a genuine factual dispute that calls for a trial and for fact finding by judge or jury. The second is a discretionary option by the judge to allow further fact finding even when there is no genuine dispute of fact. The third is where judgment in favor of the other party is justified.

*Browne v. State Farm Mut. Auto. Ins. Co.*, 258 Md. App. 452, 481–82 (2023) (cleaned up). Even where the technical requirements for entry of summary judgment are met, a trial court has "discretion to refuse to pass upon, as well as discretion affirmatively to deny, a summary judgment request in favor of a full hearing on the merits[.]" *Metro. Mortg. Fund, Inc.*, 288 Md. at 28.

## II. Analysis

We cannot discern on what basis Mr. Baugh was entitled to a money judgment as a matter of law. If the money judgment was ordered on Count IV, that count, as pled, does not state a cause of action. If the money judgment was ordered as relief ancillary to Count II, that fails because the circuit court did not issue a declaratory judgment on

15

Count II. And without a declaratory judgment, the circuit court could not have awarded

Mr. Baugh the ancillary relief of a money judgment.

Below, we start with Count IV, a count on which the circuit court apparently

entered a final judgment (via summary judgment) in favor of Mr. Baugh, though Mr.

Baugh did not move for summary judgment on Count IV. Then, we move to Count II. On

this count, Mr. Baugh's arguments in support of summary judgment and Mr. Burns's and

Daljaco's arguments in support of their cross-motion somewhat mirror each other. We

address these arguments together.

### A. If the money judgment was ordered on Count IV, the circuit court erred as a matter of law in doing so because Count IV did not state a cause of action.

Mr. Burns and Daljaco argue that summary judgment in favor of Mr. Baugh was

inappropriate because Count IV, which alleged a breach of the Stock Purchase

Agreement's implied duties of good faith and fair dealing, did not state a cause of action

in Maryland. Mr. Baugh counters by arguing that he was entitled to summary judgment

because Section 2.5.1 of the Stock Purchase Agreement mandated a distribution and was

based on a net cash and net liability basis.

We agree with Mr. Burns and Daljaco. In Count IV, which Mr. Baugh styled

"Breach of Contract – Breach of Implied Covenant of Good Faith and Fair Dealing[,]"

Mr. Baugh relied on the Stock Purchase Agreement's implied duties, not on Section

2.5.1, or any other express provision of the Stock Purchase Agreement, to claim that there was a breach.[7] Specifically, Mr. Baugh alleged that

> Defendants Mr. Burns and Daljaco have breached the implied covenant of good faith and fair dealing by taking actions to obtain an ERTC for the 2020 tax year without the consent of Plaintiff, by purporting to deprive Plaintiff of the benefits of any ERTC received for the 2020 tax year, and by seeking to impose a tax liability on Plaintiff for money he will not receive.

But the Stock Purchase Agreement's implied duties are "not understood to interpose new obligations about which the contract is silent[.]" *See E. Shore Mkts., Inc.*, 213 F.3d at 184. Because Mr. Baugh identified no explicit contractual provision that had been breached, Mr. Baugh's breach of contract claim fails. As a result, Mr. Baugh was not entitled to judgment as a matter of law on Count IV.

Mr. Baugh does not take issue with the basic premise that a contract's implied duties cannot, by themselves, support a claim for breach. Instead, Mr. Baugh here posits a new theory for contractual breach, this based on an express provision of the Stock Purchase Agreement, Section 2.5.1. This section provides that

---

[7] The only express contractual provision that Mr. Baugh mentioned was Section 2.7. But Mr. Baugh did not allege that Section 2.7 had been breached or that it pertained to ERTC's. Instead, Mr. Baugh alleged that Section 2.7 was "an example" of the agreement's implied duties of good faith and fair dealing and that it pertained to Daljaco's since-forgiven PPP loan. In this regard, Mr. Baugh alleged:

> Plaintiff and Defendants parties had a duty to act in good faith and fair dealing in the performance of the Stock Purchase Agreement. For example, pursuant to Section 2.7 of the Stock Purchase Agreement, while the parties anticipated that Daljaco's PPP loan would be forgiven under the CARES Act, the Agreement provided: "In the event all or any percentage of the PPP Loan is not forgiven, [Plaintiff] and [Defendant Mr. Burns] shall be required to share in the obligation to repay the Loan in equal amounts within ten (10) days written notice."

17

> The parties intend for this transaction to be on a 'net cash' and 'net liability' basis. As a result, at Closing, all Current Liabilities shall remain with Company, and be satisfied, to the extent possible, from the Current Assets. Thereafter, as set forth below, all excess Current Assets shall be distributed and split between [Plaintiff] and [Defendant Burns] in equal amounts.

Mr. Baugh contends that "the plain terms" of this provision "mandate[] that Mr. Baugh receive his fifty percent share since the credits applied to the 2020 Tax Year." Mr. Baugh points to the parties' conduct after the Stock Purchase Agreement, specifically his reimbursement to Daljaco for fifty percent of the costs it incurred for having withheld, but failing to deposit, 401(k) contributions into the 401(k) plans of Daljaco's plan participants, as evidence that serves "to confirm the parties['] understanding of the plain language of the Stock Purchase Agreement."

For multiple reasons, however, we do not consider this new theory. To start, a motion for summary judgment must be made in writing and demonstrate, among other things, that the movant is entitled to judgment as a matter of law. Md. Rule 2-501(a) ("Any party may file a *written* motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law.") (emphasis added). Mr. Baugh did not move for summary judgment on Count IV, let alone on the basis of his new Section 2.5.1. theory. Therefore, there was no "written motion" on which the circuit court could have granted summary judgment to Mr. Baugh on Count IV.

More significantly, because Mr. Baugh's new theory was absent from Mr. Baugh's First Amended Complaint, it would not be one that we could consider, or that the circuit court could have considered, on summary judgment. "A plaintiff may not amend its

18

complaint through arguments at the summary judgment stage." *Sensormatic Sec. Corp. v. Sensormatic Elecs Corp*., 455 F. Supp. 2d 399, 436 (D. Md. 2006).[8] The proper procedure was for Mr. Baugh to amend his complaint, which he did not do. *See id.* ("To the extent that [a party] seeks to add an unjust enrichment claim . . . , the proper procedure is for [the party] to file a motion to amend . . . in accord[ance] with [Federal Rule of Civil Procedure] 15(a).")[9]; *see also* Md. Rule 2-341(c) (permitting a party to amend their pleading to "change the nature of the action," or "set forth a better statement of facts concerning any matter already raised," or "make any other appropriate change[,]" among other kinds of changes). As above, Mr. Baugh's breach of contract claim was not premised on a breach of Section 2.5.1. Accordingly, a summary judgment argument based on this theory, even if Mr. Baugh had made one, would not properly have been before the circuit court.

The scope of our appellate review confirms this result. Ordinarily, we would not review Mr. Baugh's new theory because he did not raise it below in support of his summary judgment motion. *See* Md. Rule 8-131(a) ("Ordinarily, an appellate court will

---

[8] We look to cases interpreting the federal rules regarding summary judgment because "the Maryland summary judgment rules were taken from the federal rules of practice and procedure, so that interpretation of the federal rules [is] especially persuasive as to the meaning of the Maryland Rules." *Diffendal v. Kash & Karry Serv. Corp.*, 74 Md. App. 170, 181 (1988) (citing *Metro. Mortg. Fund, Inc.*, 288 Md. at 27).

[9] In Maryland, in some circumstances, a litigant may amend their complaint without seeking leave of the court. Md. Rule 2-341(a)(permitting amendment without leave "by date set forth in scheduling order or, if there is no scheduling order, no later than 30 days before a scheduled trial date[.]"). Here, Mr. Baugh did not amend his First Amended Complaint or seek leave to do so.

not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal."). Section 2.5.1 was not what Mr. Baugh pled in Count IV, and Count IV was not the basis on which he moved for summary judgment. Accordingly, we do not consider Mr. Baugh's new Section 2.5.1 theory in determining whether he was properly granted summary judgment below.

### B. If the money judgment was ordered as ancillary relief on Count II, the circuit court erred because it did not issue a declaratory judgment.

Mr. Burns and Daljaco contend that the circuit court erred by failing to enter a declaratory judgment, specifically a "separate written declaratory judgment." As a consequence, they contend, "[t]he parties are thus without a written document, or any kind of fair notice, as to what, precisely, has been declared in this case." They urge that the circuit court's judgment be vacated as a result.

Quoting *Reddick v. State*, 213 Md. 18, 31, *cert. denied*, 355 U.S. 832 (1957), Mr. Baugh counters that a declaratory judgment need not take any particular form "as long as the Court, *by its decree*, actually passes upon or adjudges the issues raised by the pleadings." Mr. Baugh contends that together, the circuit court's orders granting him summary judgment and denying Mr. Burns and Daljaco's cross motion together "satisfy the writing requirement under a declaratory judgment." If we disagree, Mr. Baugh urges that we review the merits of the parties' dispute, affirm the grant of summary judgment in his favor, and remand for entry of a declaratory judgment.

20

But the absence of a declaratory judgment on Count II cannot be cured by a simple remand for the purpose of entering a declaratory judgment on Count II. If the ancillary relief that the circuit court ordered was on either of the first two declarations that Mr. Baugh sought, the circuit court was without jurisdiction to enter such a declaratory judgment. If the ancillary relief was on the third declaration Mr. Baugh sought, which Mr. Baugh now contends was about Section 2.5.1 of the Stock Purchase Agreement, a declaratory judgment declaring as much would have been error because Section 2.5.1 was not the justiciable controversy that Mr. Baugh pled below.

### 1. Mr. Baugh's first two requested declarations

In Count II, Mr. Baugh sought three declarations: (1) that Mr. Burns "lacks standing to amend any of Daljaco's pre-2021 tax returns" without Mr. Baugh's consent; (2) that Mr. Baugh was "entitled to 50% of any tax credits received as a result of an amendment to any of [Daljaco's] pre-2021 tax returns, including any ERTC received by [Daljaco] due to an amendment to [Daljaco's] 2020 tax returns[;]" or (3) that Mr. Baugh was entitled to "the dollar value of such tax credits." We focus here on the first two.

Mr. Burns and Daljaco here argue that Mr. Baugh was not entitled to declaratory judgment as a matter of law, because the federal AIA and the federal DJA bar courts from providing declaratory relief with respect to the assessment and collection of federal tax. Mr. Burns and Daljaco point out that the impact of Mr. Baugh's argument—i.e., that Mr. Burns and Daljaco were not entitled to amend Daljaco's 2020 payroll tax returns, or its Form 1120S, without Mr. Baugh's consent—would be to reassess the amount of federal tax owed by, and collected from, Mr. Baugh and Mr. Burns. Because of that

21

potential, granting declaratory judgment was beyond the circuit court's subject matter jurisdiction.

Mr. Baugh counters that the AIA and the DJA do not bar his suit because these laws "serve to protect the government's interest while *assessing or collecting* taxes, and do not preclude suits which concern taxes after the assessment and collection has *already taken place.*" Mr. Baugh adds that the DJA does not pertain to disputes concerning ownership of the money generated by tax credits. He contends that because he "seeks a determination of the ownership interest of the ERTCs Daljaco *already* received for the 2020 tax year," the DJA did not bar the circuit court from granting him declaratory judgment.

We agree with Mr. Burns and Daljaco. The AIA provides, in relevant part, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C.A. § 7421(a). Looking at this clause,

> [t]he [U.S. Supreme] Court has interpreted the principal purpose of this language to be the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, and to require that the legal right to the disputed sums be determined in a suit for a refund.

*Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974) (cleaned up). The AIA "applies broadly to include activities that are intended to or may culminate in the assessment or collection of taxes." *Jud. Watch, Inc. v. Rossotti*, 317 F.3d 401, 405 (4th Cir. 2003). "The effect of the [AIA] is simple and obvious: courts lack jurisdiction to issue injunctive relief in suits seeking to restrain the assessment or collection of taxes." *Id.* "Regardless of

22

how the claim is labelled," when "the effect of an injunction . . . is to interfere with the assessment or collection of a tax[,]" the AIA stands as an obstacle. *See Int'l Lotto Fund v. Va. State Lottery Dep't*, 20 F.3d 589, 591 (4th Cir. 1994).[10] The AIA applies to state court actions as well. 26 U.S.C.A. § 7421; *see also Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 5 (1962) ("The object of § 7421(a) is to withdraw jurisdiction from *the state* and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes." (emphasis added)).

Where a taxpayer wishes to dispute the assessment or collection of tax, refund claims (or claims for credit and refund) are provided for by 26 U.S.C.A. § 7422, "a complementary provision to the AIA that permits tax refund suits against the IRS." *Rueda v. Yellen*, No. CV ELH-20-11022022, 2022 WL 684143, at *13 (D. Md. Mar. 7, 2022), *aff'd*, No. 22-1584, 2023 WL 8271939 (4th Cir. Nov. 30, 2023).[11] Section 7422(a) provides:

---

[10] In *International Lotto Fund v. Virginia State Lottery Department,* 20 F.3d 589, 590 (4th Cir. 1994), the International Lotto Fund, an Australian trust, challenged the ability of the IRS and the Commonwealth of Virginia to withhold U.S. taxes from its winnings under a U.S.-Australian income tax treaty. The Fourth Circuit held that the AIA barred the District Court from providing injunctive relief because it interfered with the IRS's timely assessment and collection of taxes and because it bypassed the proper legal path to challenging the assessment of taxes, "namely to pay the tax under protest and then seek a refund. *Id.* at 591. The Supreme Court's reading of the Anti–Injunction Act makes it clear that challenges to the validity of a tax assessment can be determined in a refund proceeding[.]" *Id.*

[11] Maryland Rule 1-104(b) governs the citation of unreported opinions from other jurisdictions. It provides, in relevant part, that unreported opinions issued by a court in a jurisdiction other than Maryland "may be cited as persuasive authority if the jurisdiction in which the opinion was issued would permit it to be cited as persuasive authority or as

23

**(a) No suit prior to filing claim for refund.**--No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C.A. §7422(a). "By otherwise barring suit, the AIA channels litigation over tax liability into post-payment suits for refunds under § 7422." *Rueda*, 2022 WL 684143, at *13 (citing *Nat'l Federation of Indep. Bus. v. Sebelius*, 567 U.S. 519, 543 (2012)).[12]

In determining whether a suit "has a purpose foreclosed by the AIA,"

we inquire not into a taxpayer's subjective motive, but into the action's objective aim—essentially, the relief the suit requests. The purpose of a measure is the end or aim to which it is directed. And in this context, that aim is not best assessed by probing an individual taxpayer's innermost reasons for suing. Down that path lies too much potential for circumventing the Act. Instead, this Court has looked to the face of the taxpayer's complaint. We

precedent." Md. Rule 1-104(b). Federal Rule of Appellate Procedure 32.1(a) provides that "[a] court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like; and (ii) issued on or after January 1, 2007." Accordingly, because the United States District Court for the District of Maryland issued *Rueda v. Yellen*, an unpublished opinion, after January 1, 2007, we may cite it for its persuasive value.

 *Rueda* deals with a suit by a U.S. citizen married to and jointly filing her taxes with a non-U.S. citizen without a social security number. 2022 WL 684143, at *6. The citizen was, at the time of the suit, ineligible for some of the tax benefits afforded most U.S. taxpayers under the CARES act due to the status of her husband. *Id.* In relevant part, the Court held that the case was barred by the AIA and the DJA because the injunction she sought, if granted, would require the IRS to issue her a tax credit, thereby restraining the IRS from collecting that value in taxes from her. *Id.* at *14–15.

 [12] The AIA has several exceptions enumerated in the statute. *See* 26 U.S.C.A. § 7421(a). Additionally, there are "two narrow, judicially-created exceptions to the AIA." *Rueda v. Yellen*, 2022 WL 684143, at *11. Mr. Baugh does not claim that any of these exceptions apply here.

have asked about what the Government here calls *"the substance of the suit"—the claims brought and injuries alleged—to determine the suit's object. And most especially, we have looked to the "relief requested"—the thing sought to be enjoined.* The [AIA] kicks in when the target of a requested injunction is a tax obligation—or stated in the Act's language, when that injunction runs against the "collection or assessment of [a] tax."

*Id.* at *12 (quoting *CIC Servs, LLC v. Internal Revenue Serv.*, 593 U.S. 209, 217–18 (2021) (cleaned up). The AIA has been interpreted to apply to claims for tax credits. *See, e.g., id.* at *16 ("[T]axes and tax credits are two sides of the same coin. A refundable tax credit reduces the amount of taxes owed by a taxpayer, but it may also result in the Government issuing a refund to the taxpayer. Both a suit contesting the amount of taxes owed, and a suit contesting the denial of a refundable tax credit, stake a claim to the public fisc.").

The DJA bars federal courts from providing declaratory relief "with respect to Federal taxes"—language that was "added to the [DJA] in order to reaffirm the restrictions declared in the [AIA], and to prevent taxpayers from using the [DJA] to do what they were prohibited from doing under the [AIA]." *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 583 (4th Cir. 1996) (cleaned up); *see* 28 U.S.C.A. § 2201(a) (permitting declaratory relief in federal court except with respect to federal taxes, with limited exceptions). "Though the [AIA] concerns federal courts' subject matter jurisdiction and the tax-exclusion provision of the [DJA] concerns the issuance of a particular remedy, the two statutory texts are, in underlying intent and practical effect, coextensive." *Id.*

The MDJA has the same effect as the DJA, at least as to the first two declarations that Mr. Baugh sought. Under the MDJA, "[i]f a statute provides a special form of

remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle." CJP § 3-409(b). Thus, "when there is a special statutory remedy for a specific type of case, and that remedy is intended to be exclusive or primary, a party may not circumvent those special statutory proceedings by a declaratory judgment action." *Utils., Inc. of Md. v. Wash. Suburban Sanitary Comm'n,* 362 Md. 37, 45 (2000) (cleaned up) (pertaining to condemnation actions). The Supreme Court of Maryland went on to explain that:

> Although most cases applying this principle have involved special statutory remedies for specific types of cases which initially begin with adjudicatory administrative proceedings, nevertheless, as shown by the broad language of [CJP] § 3–409(b) of the [DJA], the principle is equally applicable to special statutory remedies which begin with judicial proceedings.

*Id.*

Applying all of this here, we are not convinced that the AIA[13] permitted the circuit court to hear Mr. Baugh's first two declarations. To be sure, with these declarations,[14] Mr. Baugh did not explicitly seek injunctive relief against the IRS from assessing tax

---

[13] Because we conclude that the AIA and MDJA precluded the circuit court from entertaining Mr. Baugh's first two declarations, we need not examine whether the DJA had the same effect. Presumably, because the DJA pertains to the jurisdiction of federal courts, the DJA does not cabin the subject matter jurisdiction of the circuit court. But the MDJA is to be "interpreted and construed . . . to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees." CJP § 3-414.

[14] Mr. Baugh's first two declarations were (1) that Mr. Burns "lacks standing to amend any of Daljaco's pre-2021 tax returns" without Mr. Baugh's consent; (2) that Mr. Baugh was "entitled to 50% of any tax credits received as a result of an amendment to any of [Daljaco's] pre-2021 tax returns, including any ERTC received by [Daljaco] due to an amendment to [Daljaco's] 2020 tax returns[.]"

against him or collecting it. For that, Mr. Baugh would have had to join the IRS as a party below, CJP § 3-405 ("[I]f declaratory relief is sought, a person who has or claims any interest which would be affected by the declaration, shall be made a party."), and he did not do so. Nevertheless, Mr. Baugh did not establish that he actually paid the additional $180,000.00 in tax he estimated he owed as a result of Daljaco's having claimed the ERTCs.[15] By asking that the circuit court declare that Mr. Burns "lacked standing" to take the steps that led to Mr. Baugh's unpaid tax liability, or that Daljaco was not entitled to claim half of the ERTCs that led to Mr. Baugh's unpaid liability, all the while having not paid the tax liability, the target of Mr. Baugh's suit was the tax liability. Such declarations could make it more difficult for the IRS to assess, and then collect, tax from Mr. Baugh.

But even if Mr. Baugh's first two declarations could not have interfered with the IRS's assessment and collection of tax from him, we are not convinced that the MDJA allows such declarations. In essence, and as above, Mr. Baugh's first two declarations are

---

[15] To support his summary judgment motion, Mr. Baugh relied in part on his First Amended Complaint, which was verified. There, Mr. Baugh alleged that Daljaco's "amended 202 Corporate Return result[ed] in *an estimated* One Hundred and Eighty Thousand ($180,0000) dollar tax liability to [Mr. Baugh]." (Emphasis added.) The other exhibits that Mr. Baugh supplied did not establish that he had paid the estimated tax liability.

In his opposition to Mr. Burns's and Daljaco's cross motion, Mr. Baugh did not establish having actually paid the extra tax liability either. There, Mr. Baugh supplied another copy of his First Amended Complaint, his own affidavit, and an affidavit by Mr. Baugh's expert, Michael Weber, CPA, MST, among other exhibits. Mr. Baugh's affidavit did not mention having paid the tax liability. Mr. Weber's affidavit listed the documents he reviewed in forming his opinion but did not list an amended federal tax return for 2020 for Mr. Baugh, a return that presumably would have shown Mr. Baugh's actual increased tax liability and payment.

27

an attempt to dispute the $180,000.00 increased tax liability that he estimates. Such claims must be filed as Section 7422(a) refund claims (or claims for credit and refund) after the tax has been paid. In other words, in the face of the availability of a Section 7422(a) refund claim under the AIA (i.e., a "special form of remedy for a specific type of case," *see Utilities, Inc. of Maryland,* 362 Md. at 45), Mr. Baugh has not demonstrated why, as a matter of law, that statutory remedy should not have been "followed in lieu of a proceeding under the [MDJA,]" *see* CJP § 3-409(b).

Mr. Baugh argues that because his case is about a refund, it does not run afoul of the AIA. Specifically, he argues that Daljaco has already received a refund from having claimed the ERTCs. As a result, Mr. Baugh contends the federal government has already assessed and collected taxes, and has no further interest in whether Mr. Baugh or Mr. Burns gets the refund. In support of this contention, Mr. Baugh cites two federal opinions: *Marcello v. Regan*, 574 F. Supp. 586 (D.R.I. 1983), and *Jahn v. Regan*, 584 F. Supp. 399 (E.D. Mich. 1984).

These cases are not persuasive, if for no other reason than they do not involve pass-through entities or their shareholders. Moreover, in both, the tax had been assessed and collected, and the amount of the taxpayers' refunds had been determined. Here, while Daljaco received a refund, there is no evidence that Mr. Baugh, as one of Daljaco's shareholders, had paid federal income tax on the portion of Daljaco's profits that had been attributed to him. And, because no tax has been paid by Mr. Baugh, there has been no determination by the IRS that Mr. Baugh is entitled to a refund. We now discuss these cases in some detail.

28

In *Marcello v. Regan*, plaintiffs Marcello, Dubois, and Whittaker, all Rhode Island residents, had overpaid their federal income tax. 574 F. Supp. at 587, 591. Marcello and Dubois were allegedly delinquent in their spousal or child support payments, as was Whittaker's spouse. *Id.* at 587. Pursuant to its tax intercept program, the federal government transferred "all or some material part" of the overpayment to the State of Rhode Island. *Id.* In rejecting defendants' argument that the AIA and the DJA barred plaintiffs' suit, the U.S. District Court noted that "[a] tax refund can be intercepted only after the [IRS] has calculated a tax liability and determined that the tax has been overpaid. At that point, assessment and collection are ancient history." *Id.* at 594.

In *Jahn v. Regan*, similarly, plaintiffs were husband and wife challenging the transfer of their joint tax refund to the State of Michigan to apply to the husband's child support debt. 584 F. Supp. at 401. Plaintiffs claimed that the refund was held as tenants by the entireties and could not be applied to satisfy the husband's debts. *Id.* Rejecting the IRS's argument that plaintiffs' suit was barred by the AIA and the DJA as "interfer[ing] with taxation procedures," the U.S. District Court noted that plaintiffs were "challenging the IRS procedure of transferring funds which have already been assessed and collected to the State. Hence, the [AIA] does not apply to the instant action." *Id.* at 407, 408.

Here, unlike the taxpayers above, Mr. Baugh, as one of Daljaco's shareholders for the 2020 tax year, did not establish that he paid the increased tax liability about which he complains. Instead, Mr. Baugh asked for declarations that Daljaco was not entitled to claim the tax credits that led to the estimated increase. Such declarations could presumably mean that Mr. Baugh would have to pay no, or less, additional tax, and as

29

such, could well interfere with the federal government's assessment and collection of tax from Mr. Baugh. As a consequence, we are not persuaded, as a matter of law, that such declarations were the circuit court's to make.

## 2. Mr. Baugh's third requested declaration

Mr. Burns and Daljaco next argue that the circuit court erred by entering money judgment in favor of Mr. Baugh, via summary judgment, because there was a material dispute of fact regarding whether Mr. Baugh was actually entitled to fifty percent of the dollar value of the ERTCs that Daljaco received for the 2020 tax year. Specifically, Mr. Burns and Daljaco point out,

> The dollar-for-dollar amount of the [ERTCs] is not passed directly through to the shareholders of the S corporation as a refund. Rather, the company that receives the [ERTCs] still has to apply the value of those credits against its wage expenses and conduct an income-tax analysis. Only then would a K-1 be issued, reflecting the net effect of the [ERTCs] on the income, losses, and dividends that pass through to each shareholder.

Because there was a dispute about the effect of the ERTCs on Daljaco's finances, the circuit court erred by basing its award on the refund Daljaco received for the ERTCs. Mr. Burns and Daljaco also take issue with Mr. Baugh's reliance on the Stock Purchase Agreement's Section 2.5.1 to support the relief he received, arguing that "[h]aving missed the mark twice, [Mr.] Baugh now takes a third tack" in arguing that Section 2.5.1 and Mr. Baugh's conduct after closing on the Stock Purchase Agreement entitle him to relief here.

Mr. Baugh counters that the circuit court did not err by entering money judgment for him as a matter of law. He argues that there was no material dispute of fact that after

filing to claim the ERTCs for 2020, Daljaco sold its entire $1.4 million ERTC receivable to a third party and then wired the funds to that third party. Mr. Baugh contends that because the tax attributes of an S corporation belong to its shareholders, and he was a fifty percent shareholder of Daljaco during the 2020 tax year, and because Section 2.5.1 of the Stock Purchase Agreement entitled him to a distribution from Daljaco on a "net cash" and "net liability" basis,[16] he was entitled to the $601,501.85 money judgment that he received from the circuit court as a matter of law.

We agree with Mr. Burns and Daljaco. Mr. Baugh was not entitled to the ancillary relief of a money judgment because the circuit court never declared in a written declaratory judgment that Mr. Baugh was entitled to such relief. A circuit court may grant ancillary relief consistent with a declaratory judgment and do so in the action in which plaintiff requests it, but first, the circuit court must issue a declaratory judgment. Here, there was no declaratory judgment, and without a declaratory judgment, the circuit court was without authority to enter a money judgment in favor of Mr. Baugh.

Mr. Baugh's reliance on *Reddick v. State* does not convince us otherwise because there, the chancellor's decree, by including findings of fact and conclusions of law, did "pass upon or adjudge the issues raised by the pleadings." *See* 213 Md. at 31. On the State's bill for declaratory relief and injunction, the chancellor declared that Dr. Reddick and others were not the duly constituted board of the Maryland State Homeopathic

---

[16] For this argument, Mr. Baugh again points to his reimbursement of Daljaco for fifty percent of the costs it incurred as a result of its failure to deposit 401(k) contributions, and contends that it "only serve[s] to confirm the parties['] understanding of the plain language of the Stock Purchase Agreement."

31

Medical Society. *Id*. at 18–27. After making findings of fact and conclusions of law in his opinion, the chancellor "repeated [them], as recitals, in the decrees themselves." *Id.* at 31. Of the sufficiency of the decrees, our Supreme Court said, "[i]t is not necessary that a declaratory judgment be in any particular form, as long as the Court, by its decree, actually passes upon or adjudges the issues raised by the pleadings." *Id.* Here, the trial court's summary judgment orders were not declaratory judgments because they contained no decrees or findings of fact and conclusions of law addressing the issues raised in Count II.

Mr. Baugh's reliance on Section 2.5.1 of the Stock Purchase Agreement only compounds the problem. "The requirement that the court enter its declaration in writing is for the purpose of giving the parties and the public fair notice of what the court has determined." *Bowen,* 402 Md. at 609 (cleaned up). Moreover, a circuit court errs when "entering a declaratory judgment that was not requested in the plaintiff's complaint." *S. Kaywood Cmty. Ass'n v. Long*, 208 Md. App. 135, 144 (2012).[17]

---

[17] In *South Kaywood Community Association v. Long*, plaintiffs sought a declaration as to whether a restrictive covenant that limited lot use to "single family residences" prohibited a lot owner from "renting the property to persons who are not related by blood, marriage, or adoption." 208 Md. App. at 136–37. The circuit court rendered that declaration, but also declared that "1) three unrelated college students living together did not violate the restrictive covenant and 2) that the rental agreement between the coeds and [the lot owners] did not violate any provisions of the [County] Zoning Ordinance." *Id.* at 143, 163.

On appeal, we held that "the [circuit] court erred in entering a declaratory judgment that was not requested in the plaintiff's complaint." *Id*. at 144. We noted that the restrictive covenant's impact on those unrelated by blood, marriage, or adoption "was the justiciable controversy presented to the trial court." *Id*. We vacated the circuit court's declaration regarding the restrictive covenant's impact on "unrelated college students

In Count II, Mr. Baugh did not seek a declaration regarding his rights under Section 2.5.1. Instead, he merely asked the circuit court to declare that he was entitled to the dollar value of fifty percent of the ERTCs Daljaco received as a result of amending its 2020 tax return. As the source of this entitlement, Mr. Baugh cited two judicial opinions from two federal courts and alleged that those opinions supported the relief he wanted. But the circuit court's summary judgment orders did not determine what rights Mr. Baugh had (or did not have) under these judicial opinions.[18] Indeed, the circuit court's summary judgment orders did not declare the rights of the parties in any controversy, let alone in the controversy that Mr. Baugh pled. Because, the circuit court's summary judgment orders were not a declaratory judgment, they could not have supported the ancillary relief that Mr. Baugh received.

**CONCLUSION**

We reverse the circuit court's grant of summary judgment to Mr. Baugh as well as its decision declining to grant summary judgment to Mr. Burns and Daljaco. We vacate

---

living together" and the Zoning Ordinance's impact on the lot owners' rental agreement with the coeds, noting that "[t]he Complaint filed by the [lot owners] simply did not call upon the court to make a declaration as to those uses." *Id.* at 163.

[18] These were *Alon International, Inc. v. United States*, 910 F. Supp. 233 (W.D. Pa. 1995) and *In re RedF Marketing, LLC*, 589 B.R. 534 (Bankr. W.D.N.C. 2018). Neither involved a claim for a refund by an S corporation based on newly-available ERTCs.

At oral argument, Mr. Baugh also suggested that the circuit court had issued a declaratory judgment because it had declared the rights of the parties in the escrowed funds. We do not address this argument because it was not raised in Mr. Baugh's appellate brief. *See* Md. Rule 8-504(a)(4). Nor was it something that Mr. Baugh asked for in Count II of the First Amended Complaint.

the money judgment in favor of Mr. Baugh. We remand for further proceedings not inconsistent with this opinion. We express no opinion on whether Mr. Baugh should be permitted to again amend either, or both, counts of his complaint. If the circuit court permits Mr. Baugh to amend Count II, the circuit court should determine whether it has jurisdiction to address any declaration that Mr. Baugh may seek and whether declaratory judgment is otherwise appropriate. If the circuit court determines that it has jurisdiction, and that declaratory judgment is otherwise appropriate, the circuit court must issue a proper declaratory judgment, meaning a separate written declaration of the rights of the parties relative to the justiciable controversy or controversies that Mr. Baugh presents. The circuit court should then determine, based on the declaratory judgment it has issued, whether Mr. Baugh is entitled to ancillary relief, and of what kind. As to all of these decisions, the circuit court should make appropriate factual findings.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY ON APPELLEE'S MOTION FOR SUMMARY JUDGMENT IS REVERSED.**

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY ON APPELLANTS' CROSS MOTION FOR SUMMARY JUDGMENT IS REVERSED.**

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY GRANTING MONEY JUDGMENT, INTEREST, AND DISBURSAL OF ESCROWED FUNDS IN FAVOR OF APPELLEE IS VACATED.**

**THE CASE IS REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS**

**NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**